2017 IL App (1st) 151318

SIXTH DIVISION
March 31, 2017

Nos. 1-15-1318, 1-16-0602 cons.

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DANIEL CUEVAS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County, |
| Plaintiff-Appellant, | ) | Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH BERRIOS, in His Official Capacity as Assessor of | ) | Appeal No. 1-15-1318 |
| Cook County; and THE DEPARTMENT OF ERRONEOUS | ) | No. 15 CH 2321 |
| HOMESTEAD EXEMPTION ADMINISTRATIVE | ) | |
| HEARINGS, | ) | |
| | ) | The Honorable |
| | ) | Mary Lane Mikva, |
| Defendants-Appellees. | ) | Judge Presiding. |
| | ) | _____ |
| DANIEL CUEVAS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County, |
| Plaintiff-Appellee, | ) | Illinois |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 1-16-0602 |
| JOSEPH BERRIOS, in His Official Capacity as Assessor of | ) | No. 15 CH 169 |
| Cook County; MARIA PAPPAS, in Her Official Capacity as | ) | |
| Treasurer of Cook County; DENNIS MICHAEL FLEMING, in | ) | |
| His Official Capacity as Administrative Law Judge; and THE | ) | The Honorable |
| DEPARTMENT OF ERRONEOUS HOMESTEAD | ) | Peter Flynn, |
| EXEMPTION ADMINISTRATIVE HEARINGS, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellants. | | |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Illinois law allows property owners to claim a partial exemption, commonly known as the "homestead exemption," from real estate taxes for their primary residence. Plaintiff Daniel Cuevas claimed homestead exemptions on 11 different properties which he owned in Cook County. Only one of those properties was his principal residence. The county assessor, defendant Joseph Berrios, convened an administrative hearing to determine the relevant facts regarding Cuevas's exemptions and the amount he might owe due to any improper exemptions. The Department of Erroneous Homestead Exemption Administrative Hearings (DEHE) determined that Cuevas improperly took exemptions on 10 of the 11 properties and that he owed $91,984.85 for back taxes, penalties, and interest for tax years 2007 to 2012.

¶ 2    Cuevas filed two lawsuits challenging this action. In case No. 15 CH 2321 (the class action case), the circuit court upheld the legality of the administrative hearing process and the underlying statute against a host of challenges asserted by Cuevas. Cuevas also filed an administrative review case, No. 15 CH 169. In that case, the circuit court reversed the DEHE's determination that Cuevas was responsible for back taxes for the 2007 tax year. We affirm the circuit court's judgments in both cases.

¶ 3                            BACKGROUND

¶ 4    In 2013, the General Assembly adopted section 9-275 of the Property Tax Code (35 ILCS 200/9-275 (West Supp. 2013)), which creates a process by which Cook County can recover delinquent taxes owed by taxpayers who improperly claimed homestead exemptions. Pub. Act 98-93 (eff. July 16, 2013) (adding 35 ILCS 200/9-275). To that end, the law requires the Cook County assessor to include certain admonitions in his periodic assessment notices to taxpayers, including a list of any homestead exemptions taken for the subject property, the eligibility

2

requirements for homestead exemptions, and "information regarding penalties and interest that may be incurred" due to an erroneous exemption "in a previous taxable year." 35 ILCS 200/9-275(b) (West Supp. 2013).

¶ 5     Section 9-275(*l*) also required the assessor to establish an "amnesty period," running from July 16, 2013 to December 31, 2013. 35 ILCS 200/9-275(*l*) (West Supp. 2013). During that period, taxpayers who claimed improper homestead exemptions for "tax year[s] prior to the 2013 tax year" were allowed to pay their delinquent taxes without interest or penalties. *Id.* The law granted those taxpayers a benefit in return. The Cook County clerk was to "abate and not seek to collect any interest or penalties that may be applicable and shall not seek civil or criminal prosecution for any taxpayer for tax years prior to 2013." *Id*. However, taxpayers such as Cuevas who had claimed three or more improper homestead exemptions were not eligible for the amnesty program. *Id*.

¶ 6     Since its original enactment in 2013, section 9-275 has been amended five times. See Pub. Act 98-756, § 195 (eff. July 16, 2014); Pub. Act 98-811, § 5 (eff. Jan. 1, 2015); Pub. Act 98-1143, § 5 (eff. Jan. 1, 2015); Pub. Act 99-143, § 325 (eff. July 27, 2015); Pub. Act 99-851, § 5 (eff. Aug. 19, 2016). The version of section 9-275 at issue here allows the assessor, after giving prior notice, to place tax liens against real estate owned by persons who claimed more than one homestead exemption. 35 ILCS 200/9-275(c) (West Supp. 2013). The assessor must give affected owners advance notice of his intent to lien their properties. Section 9-275(c) classifies these taxpayers into two groups. The first group includes taxpayers who claimed one or two improper exemptions during any of the "3 assessment years immediately prior to assessment year" in which the assessor issues the pre-lien notice. *Id.* For these taxpayers, the proposed lien amount includes only the omitted taxes and 10% annual interest. 35 ILCS 200/9-275(f) (West

Supp. 2013). As noted above, taxpayers in the first group could take advantage of the amnesty period. The second group includes taxpayers such as Cuevas, who claimed three or more erroneous homestead exemptions during the preceding six assessment years. 35 ILCS 200/9-275(c) (West Supp. 2013). For this group, the proposed lien amount also includes a penalty of 50% of the omitted taxes on the subject property. 35 ILCS 200/9-275(f) (West Supp. 2013). Property owners who receive a pre-lien notice may contest it within 30 days of service by requesting a hearing before an independent hearing officer appointed by the assessor. 35 ILCS 200/9-275(e) (West Supp. 2013). Section 9-275(e) provides that the hearing officer's decision is subject to review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)).

¶ 7 If the owner does not request a hearing or does not prevail at the hearing, the assessor may record a lien against the property in the above-described amounts. 35 ILCS 200/9-275(f) (West Supp. 2013). When the lien is paid, the assessor releases the lien, the portion of the proceeds attributable to delinquent taxes are paid to the various taxing agencies, the interest is paid to the county, and the penalties are paid to the assessor to offset administrative costs. 35 ILCS 200/9-275(k) (West Supp. 2013).

¶ 8 On or about May 27, 2014, the assessor sent Cuevas notices of intent to record a tax lien on 11 different properties. Cuevas requested a hearing pursuant to section 9-275(f). On December 4, 2014, after a hearing, the DEHE hearing officer issued a written order finding that Cuevas took improper exemptions on the 10 properties at which he did not reside and found him liable under section 9-275. This order resulted in an aggregate amount due of $91,984.85, including taxes, penalties, and interest.

¶ 9 On January 6, 2015, Cuevas filed a timely petition for administrative review of that decision (case No. 15 CH 169). As amended, the administrative review complaint alleged that

the DEHE's decision was erroneous because, among other reasons, the new lien and collection system could not apply to taxes which became delinquent before the July 16, 2013 effective date of Public Act 98-93.

¶ 10    On February 10, 2015, Cuevas filed a second lawsuit (case No. 15 CH 2321) which he framed as a class action to also include similarly affected taxpayers. As amended, the complaint asserted numerous claims against section 9-275. These included, among other things: violation of state and federal constitutional guarantees of uniform taxation, equal protection, and due process; vagueness; ambiguity; and arbitrariness. Like the administrative review lawsuit, it also challenged the law's retroactive effect, noting that the tax years in question—2006-2012—all pre-dated the 2013 effective date of the law. The two lawsuits were assigned to different judges and were never consolidated or reassigned in the circuit court.

¶ 11    Although the class action case was filed after the administrative review case, it proceeded to final judgment first. In the class action case, the defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). The section 2-619 portion of the motion argued that the class action complaint should be dismissed because it was duplicative of the pending administrative review case. The section 2-615 portion of the motion argued that the complaint failed to state a valid cause of action because section 9-275's application to Cuevas was, in fact, constitutional.

¶ 12    The court denied the section 2-619 portion of the motion, essentially finding that Cuevas could bring his constitutional claims independently of the still-pending administrative review case. However, on April 14, 2015, the court dismissed the class action complaint with prejudice pursuant to section 2-615 of the Code, rejected the constitutional claims, and found that section 9-275's retroactive effect was proper.

¶ 13    The defendants also moved to dismiss the administrative review case, arguing in part that the case was duplicative of the class action case which was still pending before a different judge. On September 29, 2015, the court presiding over the administrative review case granted that portion of the motion, which had the effect of eliminating all of Cuevas's claims except one: whether section 9-275 allowed the defendants to reach back to collect delinquent taxes for 2007, an issue never addressed in the class action case. On October 20, 2015, the court memorialized the partial dismissal in a written order and set a briefing schedule on the sole issue of the 2007 tax delinquency.

¶ 14    On January 25, 2016, the court in the administrative review case held that prosecutions for erroneous homestead exemptions could only begin in 2014, and because the statute only allowed assessments for the prior six years (2008-2013), the hearing officer could not assess taxes for the 2007 tax year. The court therefore reversed the hearing officer's decision as to that particular year. This court consolidated the two timely appeals which followed.

¶ 15                                                    ANALYSIS

¶ 16    We begin with the appeal from the dismissal of the class action complaint. The circuit court dismissed the amended class action complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id*. at 429. We review an order granting or denying a section 2-615 motion *de novo*. *Id.* We also review the constitutionality of a statute *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 22.

¶ 17    Cuevas first contends that section 9-275 does not apply at all to tax years before 2013. He contends that the temporal reach of section 9-275, as properly construed, allows the assessor to pursue only those delinquent taxes which accrued after the July 16, 2013, effective date of the section. In the alternative, Cuevas claims that even if the section could be read to allow collection of pre-2013 taxes, such an interpretation would violate property owners' right to due process of law under the fourteenth amendment to the United States Constitution, because it imposes penalties on taxes which became delinquent before section 9-275 became effective. In short, this argument suggests that the law has an unconstitutionally retroactive effect.

¶ 18    Another panel of this court recently addressed a challenge to section 9-275 raising both of these claims. In *Mulry v. Berrios*, 2017 IL App (1st) 152563, a taxpayer asserted that section 9-275 had an impermissibly retroactive effect because the tax years in question, 2010 through 2012, pre-dated the 2013 effective date of the law.

¶ 19    Relying on the plain language of section 9-275(f), which states that the law applies to exemptions taken erroneously in "any of the three collection years immediately prior to the current collection year" (35 ILCS 200/9-275(f) (West 2014)), the *Mulry* court found the General Assembly "clearly and unequivocally" intended that section 9-275(f) apply to tax years which had occurred before the effective date of the law. *Mulry*, 2017 IL App (1st) 152563, ¶ 12. The court found further support for this interpretation because of the amnesty period established by section 9-275(*l*). That provision, which establishes an amnesty period that ran from July 16, 2013 to December 31, 2013, specifically applies to taxes owed "due to an erroneous homestead exemption granted in a year prior to the 2013 tax year." 35 ILCS 200/9-275(*l*) (West 2014). In *Mulry*, the court found that, if the taxpayer's interpretation were correct, the amnesty period would serve no purpose because taxes "prior to the 2013 tax year" would fall completely outside

7

the scope of section 9-275. *Mulry*, 2017 IL App (1st) 152563, ¶ 12. We agree with the *Mulry* court's analysis and find no reason to depart from it here.

¶ 20    Because we reject Cuevas's interpretation of section 9-275, we must address his constitutional challenge. Our supreme court has held that "[a] retroactive tax measure does not necessarily violate the due process provisions of either the Illinois or the Federal constitution," because "[a] court must consider the nature of a tax measure and the circumstances leading to its adoption before the court may determine 'that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' " *General Telephone Co. of Illinois v. Johnson*, 103 Ill. 2d 363, 378-79 (1984) (quoting *Welch v. Henry*, 305 U.S. 134, 147 (1938)). Further, " '[a] statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation], or upsets expectations based in prior law.' " *Hayashi*, 2014 IL 116023, ¶ 25 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994)); see also *Cox v. Hart*, 260 U.S. 427, 435 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.").

¶ 21    The *Mulry* court was also faced with a constitutional challenge virtually identical to the one Cuevas presents here. The taxpayer in *Mulry* also claimed that imposing interest, penalties, and a lien for taxes which had already been imposed before section 9-275 became effective was unconstitutional. The *Mulry* court rejected this theory, finding that applying the law to delinquencies for prior tax years was neither unconstitutional nor otherwise impermissible. The court strongly relied on *Hayashi* in its analysis. The *Hayashi* court stated that "a statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive effect on the parties." *Hayashi*, 2014 IL 116023, ¶ 26. Accordingly, the *Mulry* court found, "The Cook County assessor's 'Notice of Erroneous Homestead Exemptions' for tax

years 2010, 2011, and 2012 affected only Mulry's present and future eligibility to continue to retain erroneous exemptions from her property tax bill. [Section 9-275's] impact on her has been solely prospective and not impermissibly retroactive." *Mulry*, 2017 IL App (1st) 152563, ¶ 14.

¶ 22    We agree with the *Mulry* court that section 9-275's application to Cuevas's tax obligations is not impermissibly retroactive. Cuevas was never entitled to take simultaneous homestead exemptions on multiple properties. See *id.* ¶ 14 (noting that the homestead exemption rules have been in place since 1851). Section 9-275 only created a new collection mechanism regarding taxes due to the county which Cuevas illegally withheld in prior years. These funds were properly due and owed to Cook County all along.

¶ 23    We recognize that the facts presented in *Mulry* are slightly different from those here. The taxpayer in *Mulry* was in the "first group" of taxpayers who took improper homestead exemptions in a smaller number of years and were thus not subject to the additional 50% penalty imposed on the more frequently delinquent taxpayers, such as Cuevas in the "second group". See 35 ILCS 200/9-275(f) (West 2014). With respect to Cuevas's retroactivity challenge, though, this is a distinction without a difference. Taxpayers in the first group still were required to pay 10% interest on their delinquencies, which is actually less than the 18% interest normally applied to delinquent tax bills. See 35 ILCS 200/21-15 (West 2014). From a purely arithmetical standpoint, the additional penalty for more severely delinquent taxpayers in the second group, simply imposes a higher interest rate upon them than those in the first group. This distinction is eminently reasonable, given the greater level of tax evasion demonstrated by taxpayers in the second group. But the distinction does not alter the analysis of whether section 9-275 is impermissibly retroactive. Following our supreme court's retroactivity analysis in the recent

*Hayashi* case and the sound and thorough analysis of *Mulry*, we reject Cuevas's retroactivity challenge.

¶ 24    Cuevas's next argument is that section 9-275 violates the revenue article of the Illinois Constitution of 1970. Ill. Const. 1970, art. IX, § 4(a). That section states: "Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." *Id.* He contends that the law's application to Cook County, while omitting other counties, creates an improperly nonuniform taxation system.

¶ 25    Our supreme court has explained that section 4 of the revenue article merely requires equality of taxation within each individual tax district. *Kankakee County Board of Review v. Property Tax Appeal Board*, 131 Ill. 2d 1, 20 (1989). If a uniformity claim does not allege a disparate valuation or rate of taxation for similar properties within individual taxing districts, it must be dismissed. *Rodgers v. Whitley*, 282 Ill. App. 3d 741, 751 (1996).

¶ 26    Applying these principles to Cuevas's appeal, we find that his uniformity challenge fails. Simply put, nothing in section 4 addresses penalties for delinquent taxes or mechanisms to collect them. Section 9-275 does not *impose* any tax whatsoever. It merely establishes a new mechanism to collect delinquent taxes.

¶ 27    In the context of his revenue article claim, Cuevas offers the additional argument (albeit in cursory fashion) that section 9-275(g) violates the right of Illinois taxpayers to the equal protection of the law by creating different tax systems for different counties. True, section 9-275 in general only applies to counties over 3 million inhabitants, a classification which has the operative effect of including Cook County and excluding all 101 of Illinois's other counties from the statute's reach. Despite that fact, Cuevas's equal protection challenges fails for several

reasons. First, section 9-275(g), which he specifically cites in his brief, is not the main operative provision in the overall system established in section 9-275. Section 9-275(g) merely exempts persons who have inherited property from certain relatives from penalties that would have been otherwise imposed for taking an improper homestead exemption. 35 ILCS 200/9-275 (West Supp. 2013). Cuevas's argument on this issue, which does not cite a single authority, fails to explain how this class of relatives somehow creates a class singled out for discriminatory treatment as required for an equal protection analysis. When an appellant presents an argument merely by listing it or vaguely alleging it, it is not "argued" as required by Illinois Supreme Court Rule 341 (eff. Feb. 6, 2013), and is forfeited. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36.

¶ 28    Forfeiture aside, Cuevas's challenge to the statute's creation of a more aggressive collection mechanism for delinquent taxes in Cook County than in other counties fails on the merits. "A legislative classification based upon population will be sustained 'where founded on a rational difference of situation or condition existing in the persons or objects upon which [the classification] rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished.' " *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 369 (1985) (quoting *People v. Palkes*, 52 Ill. 2d 472, 477 (1972)). There are clear rational bases for section 9-275's classification among various counties. Because of population density and other factors common to urban areas, it is far more likely that those areas will have a greater proportion of persons owning multiple rental residential properties. Additionally, an assessor in such a large county is more likely to have financial resources and staff capable of properly administering the administrative adjudication and collection systems. Finally, we recognize our supreme court's admonition that lawmakers may "address problems one step at a

time." *Id.* at 371. The collection system established by section 9-275 is sufficiently novel that the legislature could well have intended that it begin in Cook County (which, as noted above, has a large professional staff) and then expand it later, if it proved beneficial.

¶ 29    Cuevas next contends, again without citing any authority, that section 9-275 is invalid because the funds it generates unjustly enriches "the Cook County Assessor's Office." Forfeiture aside, this argument is without merit. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mount Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). None of these elements apply here. The assessor does not hold any penalties and interest generated under section 9-275 personally, but rather in his official capacity, for the benefit of the county itself and local taxing bodies. The county and taxing bodies were entitled to the delinquent taxes all along. Cuevas's failure to pay these taxes on time required these governments to look to other resources to make up lost revenues. The penalties and interest imposed by section 9-275 help make those governments whole for losses they sustained waiting for Cuevas to pay his delinquent taxes.

¶ 30    We have limited our analysis to the arguments Cuevas included in his appellant's brief. In his reply brief, he presents several new arguments, but they have been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in the appellant's brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). We therefore affirm the circuit court's order dismissing the class action complaint.

¶ 31    In the administrative review case, the circuit court reversed the hearing officer's finding that Cuevas was liable for taxes, penalties, and interest for the 2007 tax year. The court found

that because the assessor served Cuevas with a notice of intent to lien in 2014, the six-year period specified in section 9-275(c) with respect to delinquent taxpayers included only the years 2008 through 2013, and excluded 2007, that year being seven years before the service of the notice.

¶ 32    Section 9-275(e) provides that all final administrative decisions of DEHE are subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). The Administrative Review Law provides that judicial review extends to all questions of law and fact presented by the entire record. 735 ILCS 5/3-110 (West 2014). In a case arising under the Administrative Review Law, we review the decision of the administrative agency, not that of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009).

¶ 33    The issue presented is one of statutory construction. When construing a statute, our goal is to "ascertain and give effect to the intent of the legislature," which begins with the language of the statute, "the best indicator of legislative intent." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). If the language is clear and unambiguous, we may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express, nor by rendering any word or phrase superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Although courts will generally defer to an agency's interpretation of the statutes it administers, that interpretation is not binding and will be rejected if it is erroneous. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 492 (2003). The construction of a statute presents a question of law that we review *de novo*. *Hayashi*, 2014 IL 116023, ¶ 16.

¶ 34    As noted above, section 9-275 has been amended five times since its original enactment in 2013. Because the parties' arguments center, in part, on distinctions between some of the six different versions of the statute, we must set forth the statute's evolution in some detail.

¶ 35    The entire system of collecting delinquent taxes from Cook County taxpayers with erroneous homestead exemptions at issue in this case was originally enacted as part of Public Act 98-93 (eff. June 1, 2013). That Public Act codified the provision relevant here as part of section 9-275(c) of the Property Tax Code. It allowed imposition of a lien against taxpayers who received "3 or more erroneous homestead exemptions *** during any of the 6 *assessment years* immediately prior to the *assessment year in which the notice of intent to record at* [sic] *tax lien* is served." (Emphasis added.) 35 ILCS 200/9-275 (West Supp. 2013). That language, with some further nonsubstantive typographical changes, remained in effect until January 1, 2015. Accordingly, it governed the notice of lien served on Cuevas in May 2014 and was in effect during the subsequent DEHE hearing conducted later that year.

¶ 36    On January 1, 2015, after the DEHE hearing officer had ruled on Cuevas's case but before Cuevas filed his administrative review action, Public Act 98-1143 became effective. That law rewrote the closing portion of the above-quoted clause to read "6 *collection years* immediately prior to the *current collection year in which the notice of discovery* is served." (Emphasis added.) 35 ILCS 200/9-275(c) (West 2014). Still later, on August 19, 2016, while this appeal was pending, Public Act 99-851 became effective, which added specific definitions of the terms "collection year" ("the year in which the first and second installment of the current tax year is billed") and "current tax year" ("the year prior to the collection year"). Pub. Act 99-851 (eff. Aug. 19, 2016) (amending 35 ILCS 200/9-275(c-5)).

¶ 37    Under section 9-275(c) as it existed at the time of Cuevas's hearing, the assessor's lien and collection authority extended to the "6 assessment years immediately prior to the assessment year in which the notice of intent to record at [*sic*] tax lien is served." 35 ILCS 200/9-275(c) (West Supp. 2013). It is undisputed that the assessor served Cuevas with the notice of intent to record a tax lien in calendar year 2014. And in this court, the defendants concede that the term "assessment year" in this original version of section 9-275(c) refers to the "tax year," which is the same as a calendar year, *i.e.*, 2014 taxes are assessed in calendar year 2014.

¶ 38    Applying this definition to the statute at issue, the "6 assessment years immediately prior" to 2014 are 2008, 2009, 2010, 2011, 2012, and 2013. Accordingly, the DEHE erred when it found that the assessor could use the collection system in section 9-275 to collect delinquent taxes for 2007.

¶ 39    The defendants present a variety of arguments to avoid this result. None of them are convincing. First, they note that property taxes are paid in arrears, so that taxes on the ownership of property during calendar year 2013 are actually paid in 2014. See 35 ILCS 200/21-30 (West 2014). Accordingly, they contend, when it used the term "year," the General Assembly intended to incorporate this delay, with the result that the sixth-prior "assessment year," 2008, actually refers to the 2007 tax year, whose taxes would be payable in 2008. Section 9-275(c) uses the descriptive term "assessment" rather than "payment," and nothing in the rest of section 9-275 suggests that the payment in arrears delay should be considered in interpreting the term "years." Accordingly, the plain language of the statute, which is our touchstone, demonstrates that this analysis is manifestly unsound.

¶ 40    We also reject the defendants' argument that the amnesty period established in section 9-275(*l*) demonstrates that the lien may reach back to 2007. They contend because the amnesty

period addresses delinquencies for tax years "prior to the 2013 tax year," its scope includes tax year 2012, whose taxes are payable in 2013. Under this theory, the first-prior year becomes 2012, and the sixth-prior year is thus 2007. Again, we cannot agree. As noted above, the statute creates two classes of taxpayers and establishes a distinct process and set of remedies applicable to each class. The amnesty program explicitly excludes taxpayers like Cuevas who claimed more than three improper homestead exemptions and thus only applies to the first class of taxpayers. 35 ILCS 200/9-275(*l*) (West Supp. 2013). Therefore, the amnesty program chronology is not an apt interpretive aid with respect to the second group of taxpayers such as Cuevas.

¶ 41     The defendants' final argument regarding the statute's reach back to 2007 also fails. They note that in Public Act 98-1143 (eff. Jan. 1, 2015), the General Assembly amended sections 9-275(c) and (f) to change the term "assessment years" to "collection years." The defendants contend that this change was a "clarifying" amendment enacted not to substantively change the law, but to reveal the true intent of the original drafters. We cannot agree. There is a presumption that when the legislature amends an existing statute, it intends to change the law as it existed. *People v. McChriston*, 2014 IL 115310, ¶ 18. If, however, circumstances surrounding the enactment of the amendment demonstrate that the General Assembly merely intended to clarify or interpret the prior law, this presumption may be rebutted. *Id.* "A number of factors may indicate whether an amendment is merely a clarification rather than a substantive change in the law: 'whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.' " *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010) (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)). No such declaration of intent appears in Public

16

Act 98-1143, and the General Assembly frequently employs such declarations when it rewrites statutes to clarify existing intent. See, *e.g.*, 735 ILCS 5/12-112 (West 2014) ("This amendatory Act of 1995 (P.A. 89-438) is declarative of existing law. This amendatory Act of 1997 (P.A. 90-514) is intended as a clarification of existing law and not as a new enactment."). And, as stated above, we do not find the term "assessment years" to be ambiguous or in need of clarification.

¶ 42    For these reasons, we find that the DEHE erred when it found that the assessor could collect taxes resulting from an erroneous homestead exemption for the 2007 tax year pursuant to section 9-275. We therefore affirm the circuit court's order which reversed the DEHE.

¶ 43                                                    CONCLUSION

¶ 44    We affirm the circuit court's order in appeal No. 1-15-1318 dismissing Cuevas's challenges to section 9-275. We also affirm the circuit court's order in appeal No. 1-16-1602 reversing the DEHE's decision regarding Cuevas's delinquent taxes for the 2007 tax year.

¶ 45    Affirmed.