# Illinois Official Reports

## Appellate Court

*Hussein v. Cook County Assessor's Office*, **2017 IL App (1st) 161184**

| | |
|---|---|
| Appellate Court Caption | RIBHIEH HUSSEIN, Plaintiff-Appellant, v. THE COOK COUNTY ASSESSOR'S OFFICE; JOSEPH BERRIOS, Assessor; THE DEPARTMENT OF ADMINISTRATIVE HEARINGS, ERRONEOUS HOMESTEAD EXEMPTION DEPARTMENT, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-16-1184 |
| Filed | September 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-50407; the Hon. Carl Anthony Walker, Judge, presiding. |
| Judgment | Affirmed in part; vacated in part. |
| Counsel on Appeal | Duffin & Dore, LLC, of Orland Park (Sean B. Dore, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Chaka M. Patterson and Anthony O'Brien, Assistant State's Attorneys, of counsel), for appellees. |

| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1 The plaintiff, Ribhieh Hussein, appeals from the trial court's affirmance of a decision issued by the Department of Erroneous Homestead Exemption Administrative Hearings (Department), finding that the plaintiff was liable for back taxes, interest, and penalties totaling $58,377.54 for erroneous homestead exemptions on four properties that she owned. This amount included back taxes, interest, and penalties for tax years 2007 through 2013.

¶ 2 On appeal, the plaintiff argues that (1) before the Cook County assessor's office (Assessor) could collect interest and penalties, it first bore the burden of proof of demonstrating that the erroneous homestead exemptions placed on the plaintiff's properties were not a result of clerical error and that the Assessor failed to carry that burden in this case and (2) even if the burden of proving clerical error or omission belonged to the plaintiff, she presented sufficient evidence at the hearing to carry that burden. For the reasons that follow, we conclude that the burden of proving clerical error or omission belongs to the plaintiff and that she failed to sustain that burden. We also find, however, that the portion of the Department's order finding the plaintiff liable for back taxes, interest, and penalties for tax year 2007 exceeded the Department's authority and, thus, must be vacated as void.

¶ 3 BACKGROUND

¶ 4 In 2013, the Illinois General Assembly enacted section 9-275 of the Illinois Property Tax Code (Code) (35 ILCS 200/9-275 (West Supp. 2013)), which provides the Assessor the ability to place liens on taxpayers' property for unpaid property taxes, interest, and penalties resulting from the application of homestead exemptions to which the taxpayers were not entitled (erroneous homestead exemptions). As provided in the version of section 9-275 in effect when the Assessor sought to collect unpaid taxes from the plaintiff in 2014, the Assessor was entitled to record a lien against property for which the property owner received "3 or more erroneous homestead exemptions for real property, including at least one erroneous homestead exemption granted for the property against which the lien is sought, during any of the 6 assessment years immediately prior to the assessment year in which the notice of intent to record at [*sic*] tax lien is served." 35 ILCS 200/9-275(c) (West Supp. 2013). In such a situation, the taxpayer is liable for the unpaid taxes, 10% interest per annum, and a penalty of 50% of the total amount of unpaid taxes for each year. 35 ILCS 200/9-275(f) (West Supp. 2013). A taxpayer may escape liability for the interest and penalties, however, where he or she paid the tax bills as received for each year and where the erroneous homestead exemption was the result of a clerical error or omission on the part of the Assessor. 35 ILCS 200/9-275(h) (West Supp. 2013).

¶ 5 In October 2014, pursuant to section 9-275, the Assessor sent to the plaintiff notices of intent to record liens (Notices) on four properties owned by the plaintiff. We will identify these

four properties by the last four digits of their property index numbers (PIN): 1001, 1002, 1003, and 1004 (collectively, the properties). The Notices stated that a review of the properties revealed that the plaintiff had received erroneous homestead exemptions on each of these properties. Accordingly, the Assessor notified the plaintiff that it would be imposing liens on the properties for unpaid back taxes, interest, and penalties attributable to the plaintiff's receipt of erroneous homestead exemptions if the plaintiff did not pay the amounts due within 30 days. The Notices broke down the amounts claimed due on each of the properties as follows:

PIN 1001

| EXEMPTION TYPE | TAX YEAR | PRINCIPAL | INTEREST PER ANNUM | PENALTY | ACCRUING INTEREST | TOTAL |
|---|---|---|---|---|---|---|
| HomeOwner | 2013 | $881.58 | $88.16 | $440.79 | $0 | $1410.53 |
| HomeOwner | 2012 | $809.83 | $161.97 | $404.92 | $0 | $1376.72 |
| HomeOwner | 2011 | $617.88 | $185.36 | $308.94 | $0 | $1112.18 |
| Long-Time Occupant | 2010 | $1609.91 | $643.96 | $804.96 | $0 | $3058.83 |
| HomeOwner | 2009 | $1716.47 | $858.24 | $858.24 | $0 | $3432.95 |
| HomeOwner | 2008 | $1578.92 | $947.35 | $789.46 | $0 | $3315.73 |
| HomeOwner | 2007 | $536.06 | $375.24 | $268.03 | $0 | $1179.33 |

PIN 1002

| EXEMPTION TYPE | TAX YEAR | PRINCIPAL | INTEREST PER ANNUM | PENALTY | ACCRUING INTEREST | TOTAL |
|---|---|---|---|---|---|---|
| HomeOwner | 2013 | $881.58 | $88.16 | $440.79 | $0 | $1410.53 |
| HomeOwner | 2012 | $809.83 | $161.97 | $404.92 | $0 | $1376.72 |
| HomeOwner | 2011 | $624.06 | $187.22 | $312.03 | $0 | $1123.31 |
| HomeOwner | 2010 | $1428.29 | $571.32 | $714.15 | $0 | $2713.76 |
| HomeOwner | 2009 | $1502.82 | $751.41 | $751.41 | $0 | $3005.64 |
| HomeOwner | 2008 | $1383.31 | $829.99 | $691.66 | $0 | $2904.96 |
| HomeOwner | 2007 | $534.51 | $374.16 | $267.26 | $0 | $1175.93 |

PIN 1003

| EXEMPTION TYPE | TAX YEAR | PRINCIPAL | INTEREST PER ANNUM | PENALTY | ACCRUING INTEREST | TOTAL |
|---|---|---|---|---|---|---|
| HomeOwner | 2013 | $881.58 | $88.16 | $440.79 | $0 | $1410.53 |
| HomeOwner | 2012 | $809.83 | $161.97 | $404.92 | $0 | $1376.72 |
| HomeOwner | 2011 | $617.88 | $185.36 | $308.94 | $0 | $1112.18 |
| Long-Time | 2010 | $1791.19 | $716.48 | $895.60 | $0 | $3403.27 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Occupant | | | | | | |
| HomeOwner | 2009 | $1929.80 | $964.90 | $964.90 | $0 | $3859.60 |
| HomeOwner | 2008 | $1774.12 | $1064.47 | $887.06 | $0 | $3725.65 |
| HomeOwner | 2007 | $537.10 | $375.97 | $268.55 | $0 | $1181.62 |

PIN 1004

| EXEMPTION TYPE | TAX YEAR | PRINCIPAL | INTEREST PER ANNUM | PENALTY | ACCRUING INTEREST | TOTAL |
|---|---|---|---|---|---|---|
| HomeOwner | 2013 | $881.58 | $88.16 | $440.79 | $0 | $1410.53 |
| HomeOwner | 2012 | $809.83 | $161.97 | $404.92 | $0 | $1376.72 |
| HomeOwner | 2011 | $624.06 | $187.22 | $312.03 | $0 | $1123.31 |
| HomeOwner | 2010 | $1428.29 | $571.32 | $714.15 | $0 | $2713.76 |
| HomeOwner | 2009 | $1502.82 | $751.41 | $751.41 | $0 | $3005.64 |
| HomeOwner | 2008 | $1383.31 | $829.99 | $691.66 | $0 | $2904.96 |
| HomeOwner | 2007 | $534.51 | $374.16 | $267.26 | $0 | $1175.93 |

¶ 6 Upon receipt of the Notices, the plaintiff requested a hearing. At that hearing, the plaintiff stipulated to the fact that she had, in fact, received the homestead exemptions identified in the Notices. In addition, the plaintiff offered the following testimony. She resided in a home in Burbank, Illinois, and had done so since 1991 or 1992 when she bought that home. The properties at issue were four units in a six-unit condominium building in Chicago Ridge, Illinois. The plaintiff purchased that building in 1988 and lived there from the time of purchase until she moved to Burbank in 1992. Since moving to Burbank, she has not lived in the building in Chicago Ridge. The plaintiff acknowledged that she received and paid the tax bills for the four properties at issue. When she received the bills, she would only look at them to determine whether they were the tax bills for the Chicago Ridge building or for her Burbank home and how much she owed.

¶ 7 According to the plaintiff's testimony, when she purchased the Chicago Ridge building, she never applied to receive any homestead exemptions on the properties, and she did not subsequently apply for any in 2007, 2008, 2009, 2010, 2011, 2012, or 2013. The plaintiff also testified that she did not know that any exemptions were being applied to the properties. In fact, she did not become aware of the fact that homestead exemptions had been applied to the properties until she received the Notices in October 2014.

¶ 8 In closing argument at the hearing, the plaintiff argued that because the Assessor failed to demonstrate that the plaintiff had applied for the homestead exemptions on the properties, she should be permitted to take advantage of the clerical-error provision of section 9-275(h) and not be held liable for the requested interest and penalties. The administrative law judge hearing the matter disagreed that the burden was on the Assessor to demonstrate that the plaintiff had applied for the exemptions, because nothing in the governing statute required such proof. He elaborated:

"There is a provision in the legislation that says that if it is established that this came about because of a clerical error, you would only have to pay the back taxes. It could be looked at in a couple of ways. The burden of proof is always on the assessor's office. But I don't know that that requires them to establish there was no clerical error. I don't know how you would go about doing it. The other way of looking at it is that the—if you're going to present an affirmative defense, you would have to present evidence that there was, in fact, a clerical error.

There have been no evidence [*sic*] presented here that there was any sort of clerical error. There has been no evidence presented here that there was some sort of system that was supposed to have been followed, that was not followed. The legislation, while it doesn't say so directly, seems to suggest that it is, uh, to be strictly construed, and it does set forth for the penalties and the interest that are being sought, so I find by preponderance of the evidence that, uh, that the county has established and met its burden of proof. I find that there was no evidence presented in the record one way or another that would establish the defense that these exemptions were done as a result of the clerical error of the assessor's office."

Based on these findings, the Department entered an order holding the plaintiff liable for the erroneous homestead exemptions identified in the Notices.

¶ 9 Thereafter, the plaintiff filed in the trial court a complaint for administrative review of the Department's decision. In the trial court, the plaintiff renewed her contention that the Assessor bore the burden of proving that the erroneous homestead exemptions were not the result of clerical error or omission. She also argued that even if she bore the burden of proving clerical error or omission, she had satisfied that burden.

¶ 10 After complete briefing by the parties, the trial court issued its opinion affirming the Department's decision. With respect to the issue of who bore the burden of proof on the alleged clerical error or omission, the trial court found that the language and structure of section 9-275 indicated that the burden of proof of proving clerical error or omission belonged to the plaintiff. The trial court also noted that placing the burden of proof on the plaintiff was consistent with the Code's attempts to balance protecting taxpayers from administrative errors with reducing the burden on the Assessor. According to the trial court, by placing the burden on the taxpayer to make sure that the correct exemptions are applied to a given property, section 9-275 places the burden on the person with the greatest knowledge of the property's use; after all, it would be unduly burdensome to charge the Assessor with the responsibility of staying abreast of every change in use or ownership of all of the properties in the county.

¶ 11 As for the plaintiff's contention that even if the burden to prove clerical error falls on her, she carried her burden, the trial court disagreed, noting that the plaintiff never made any effort to correct the erroneous homestead exemptions, despite receiving tax bills that would have identified the exemptions applied to each property. In addition, the trial court dismissed the plaintiff's claim that taxpayers do not have access to the documentation necessary to prove clerical error, observing that taxpayers could keep copies of the notices and bills sent to them by the Assessor and copies of their applications for exemptions.

¶ 12 Following the trial court's decision, the plaintiff brought this timely appeal.

¶ 14        Under section 9-275(e) (35 ILCS 200/9-275(e) (West Supp. 2013)), a property owner is entitled to appeal the decision of the Department to the circuit court pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). Under the Administrative Review Law, we may review all questions of law and fact presented by the record (735 ILCS 5/3-110 (West 2014)), but our review is of the decision of the administrative agency not the trial court (*Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009)).

¶ 15                                    ANALYSIS

¶ 16        On appeal, the plaintiff again argues that the Assessor bore the burden of proving that the erroneous homestead exemptions were not the result of clerical error or omission, or, in the alternative, if the burden belonged to the plaintiff to prove clerical error or omission, she carried that burden. We disagree in both respects.

¶ 17        First, we note that despite contending that section 9-275 places the burden of proof on the Assessor's office, the plaintiff merely quotes the clerical-error provision of section 9-275(h) and fails to provide any analysis of the language.[1] Nevertheless, because the thrust of the plaintiff's argument is apparent and because our review of issues of statutory interpretation is *de novo* (*Cuevas v. Berrios*, 2017 IL App (1st) 151318, ¶ 33), the plaintiff's failure to elaborate on her position does not inhibit our review of this matter.

¶ 18        The clerical-error provision of section 9-275(h), as it read in the 2014 version in effect at the time that the Department issued the Notices to the plaintiff, read as follows:

> "If the erroneous homestead exemption was granted as a result of a clerical error or omission on the part of the chief county assessment officer, and if the owner has paid its tax bills as received for the year in which the error occurred, then the interest and penalties authorized by this Section with respect to that homestead exemption shall not be chargeable to the owner. However, nothing in this Section shall prevent the collection of the principal amount of back taxes due and owing." 35 ILCS 200/9-275(h) (West Supp. 2013).

In interpreting this language, our goal is to identify and implement the intent of the legislature, which is best evidenced by the language of the statute. *Cuevas*, 2017 IL App (1st) 151318, ¶ 33. "If the language is clear and unambiguous, we may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express, nor by rendering any word or phrase superfluous or meaningless." *Id.* We must read all parts of the statute together and not in isolation, so as to "produce a harmonious whole." *Dow Chemical Co. v. Department of Revenue*, 224 Ill. App. 3d 263, 266 (1991). Although we are not bound by an agency's interpretation of a statute that it administers, we will typically defer to the agency's interpretation unless it is erroneous. *Cuevas*, 2017 IL App (1st) 151318, ¶ 33

¶ 19        Before turning to the specific language of section 9-275, we note a clear general intent by the legislature, throughout section 9-275, to place the responsibility on the taxpayer for

---

[1] In contrast, the defendants have submitted an exceptionally thorough, well-written, and well-reasoned analysis of the statutory language and underlying policy.

maintaining accurate property exemptions. For example, section 9-275(b) (35 ILCS 200/9-275(b) (West Supp. 2013)) required the Assessor, when sending out assessment notices, to include a list of homestead exemptions applied to the subject property. In the assessment notice, the Assessor was also required to advise the taxpayer that if the taxpayer, within 60 days of receiving the assessment notice, notified the Assessor that he or she received an erroneous homestead exemption in a previous assessment year and the taxpayer paid the principal amount of the resulting unpaid taxes plus interest, then the taxpayer would not be liable for any penalties. *Id.* In addition, under section 15-20 of the Code (35 ILCS 200/15-20 (West 2014)), the taxpayer has the obligation to report to the Assessor, within 90 days, any change in use, leasehold estate, or titleholder of any property listed as exempt.

¶ 20 With that context in mind, we conclude that although section 9-275 does not explicitly place the burden of proof for demonstrating clerical error or the lack thereof on either of the parties, the statute's language indicates that the General Assembly intended to place the burden on the taxpayer seeking to avoid liability for the interest and penalties arising from the erroneous homestead exemptions.

¶ 21 First, section 9-275(c) provided that the Assessor could impose a lien on property that meets the following relevant conditions:

> "(1) is located in the county and (2) received one or more erroneous homestead exemptions if, upon determination of the chief county assessment officer, the property owner received: *** (B) 3 or more erroneous homestead exemptions for real property, including at least one erroneous homestead exemption granted for the property against which the lien is sought, during any of the 6 assessment years immediately prior to the assessment year in which the notice of intent to record at [*sic*] tax lien is served." 35 ILCS 200/9-275(c) (West Supp. 2013).

Section 9-275(f) provides the requirements for the imposition of interest and penalties under the current facts:

> "[I]f a lien is filed pursuant to this Section and the property owner received 3 or more erroneous homestead exemptions during any of the 6 assessment years immediately prior to the assessment year in which the notice of intent to record at [*sic*] tax lien is served, the arrearages of taxes that might have been assessed for that property, plus a penalty of 50% of the total amount of unpaid taxes for each year for that property and 10% interest per annum, shall be charged against the property by the county treasurer." 35 ILCS 200/9-275(f) (West Supp. 2013).

¶ 22 Read together, these provisions provide that in order to recover the unpaid taxes, interest, and penalties in this case, the Assessor was required to prove three things: (1) the property on which the lien is to be imposed is in the county; (2) the property owner received three or more erroneous homestead exemptions, including one on the property at issue; and (3) the erroneous homestead exemptions were received in the six assessment years immediately prior to the assessment year in which the notice was served. Nowhere in these provisions is the Assessor required to prove an absence of clerical error or omission before it is entitled to unpaid taxes, interest, and penalties. Had the General Assembly intended that the Assessor prove a lack of clerical error or omission as part of its *prima facie* case and before it could recover, we certainly would have expected it to include such a requirement when drafting the sections identifying the requirements for imposing liability for unpaid taxes, interest, and penalties. Yet, the General Assembly did no such thing.

¶ 23    In addition, as the defendants point out, section 9-275 speaks only of the taxpayer *receiving* erroneous homestead exemptions and does not concern itself with how or why the taxpayer received the erroneous homestead exemptions, *i.e.*, whether they were received as a result of the taxpayer's application or clerical error or omission. Rather, the language imposes liability regardless of the manner in which the erroneous homestead exemptions were received. This again suggests that the General Assembly did not intend to impose an obligation on the Assessor to prove a lack of clerical error or omission.

¶ 24    Next, the language of the clerical provision itself indicates an intent that it serve as an affirmative defense, not as an element of the Assessor's cause of action. The provision provides that the taxpayer will not be liable for interest and penalties "[i]f the erroneous exemption was granted as a result of a clerical error or omission on the part of the chief county assessment officer." By phrasing it in this manner—as opposed to saying that interest and penalties could be imposed only if there was an absence of clerical error or omission by the Assessor—the General Assembly expressed an expectation that proof would be adduced of clerical error or omission, not the absence of clerical error or omission. Given that it would be the taxpayer, not the Assessor, who would assert and benefit from proof of the existence of a clerical error or omission, it seems only logical that the taxpayer would also be the one charged with producing that proof. See *Christenson v. Rincker*, 288 Ill. App. 3d 185, 191 (1997) (burden of proving defense by which the defendant could escape liability placed on the party who would benefit from it—the defendant); *Nevious v. Bauer*, 281 Ill. App. 3d 911, 916 (1996) (same); *Gibson v. State Farm Mutual Automobile Insurance Co.*, 125 Ill. App. 3d 142, 149 (1984) (referring to "the general rule that the party asserting affirmative matter has the burden of proving the issue").

¶ 25    Furthermore, the clerical error provision relieves a taxpayer of liability for "the interest and penalties *authorized* by this Section" (emphasis added) (35 ILCS 200/9-275(h) (West Supp. 2013)), thus assuming that the requirements for obtaining interest and penalties have already been met by the time that the issue of clerical error or omission is considered. Certainly, if the lack of clerical error or omission were a prerequisite for recovering interest and penalties, then there could not be any "authorized" interest or penalties until the issue of clerical error had been determined. Thus, because the language of section 9-275(h) presupposes the authorization of interest and penalties, it suggests that the General Assembly did not intend that the absence of clerical error or omission be a requirement for the Assessor's collection of unpaid taxes, interest, and penalties arising out of erroneous homestead exemptions. Rather, it intended affirmative proof of the existence of clerical error or omission to serve as an escape hatch or affirmative defense for the taxpayer to avoid the liability for interest and penalties.

¶ 26    Moreover, as discussed above, the Code has otherwise placed the burden of maintaining accurate property exemptions on the taxpayer. Accordingly, it only makes sense to also place on the taxpayer the burden of demonstrating that any error in exemptions was the result of the Assessor's error, not the taxpayer's.

¶ 27    We note that the plaintiff argued below that proof of clerical error or omission rested solely in the hands of the Assessor and that a taxpayer did not have such evidence. We disagree. Section 8(e) of the Department's Rules of Procedure provides that "[u]pon the timely request of any party to the proceeding, any person the Hearing Officer determines may reasonably be expected to provide material and non-cumulative testimony must be made available for examination prior to a final determination of erroneous homestead exemption." Accordingly,

the plaintiff certainly could have solicited evidence from the Assessor's staff to demonstrate clerical error or omission. Moreover, we observe that the taxpayer, as the owner of the property, is in the best position to know the current and correct use of his or her property, to know what exemptions he or she did or did not apply for, and to make any necessary changes or corrections in the application of homestead exemptions. Accordingly, the taxpayer is also in the best position to demonstrate that an erroneous homestead exemption resulted from Assessor clerical error or omission rather than the taxpayer's failure to report any changes in property use or ownership or to correct any errors in the application of homestead exemptions. See *Southwest Federal Savings & Loan Ass'n of Chicago v. Cosmopolitan National Bank of Chicago*, 23 Ill. App. 2d 174, 180-82 (1959) (placing the burden of proof on the party who had access to the information necessary to prove or disprove a disputed fact).

¶ 28 Having concluded that the plaintiff bore the burden of demonstrating, by a preponderance of the evidence, that the erroneous homestead exemptions were the result of the Assessor's clerical error or omission, we turn to the plaintiff's alternative argument that she satisfied this burden. According to the plaintiff, she sustained this burden by testifying, without contradiction from the Assessor, that she did not know she was receiving erroneous homestead exemptions, she did not apply for the exemptions, and she otherwise paid the assessed taxes for all of the years in question. As the Department points out, however, none of this affirmatively demonstrates that the erroneous homestead exemptions were the result of Assessor clerical error or omission. Just because the plaintiff claims to have not known about the exemptions and to have not applied for them, that does not mean that the Assessor necessarily committed error or failed to follow some procedure. For all we know, the exemptions could have carried over from a previous owner or occupant of the properties due to the plaintiff's failure to fulfill her obligation to report changes in the use or ownership of the properties or her failure to correct the erroneous application of homestead exemptions upon receipt of assessment notices.

¶ 29 The notion that the plaintiff failed to correct the erroneous application of homestead exemptions is supported by the evidence here. The plaintiff testified that she received assessment notices for each of the properties. Under section 9-275(b), those notices would have listed the homestead exemptions applied to each property. The plaintiff admitted that when she received the assessment notices, she only looked at whether they applied to the Chicago Ridge building or her Burbank home and the amount due. Thus, she did not look to see whether the applied exemptions were correct based on the use and ownership of the units, and she did nothing to correct what she now admits were erroneous homestead exemptions. We note that although the plaintiff states in her brief on appeal that she is unable to read English, she never testified to as much and, thus, it is not part of the evidence to be considered. Accordingly, based on the evidence presented to the Department, the plaintiff's lack of knowledge of the erroneous homestead exemptions appears to have been her doing, not the Department's.

¶ 30 Moreover, with respect to PIN 1001 and PIN 1003, the Notices indicate that the type of homestead exemption applied changed in 2010 from HomeOwner to Long-Term Occupant and then returned to HomeOwner in 2011. Absent additional evidence, we find it unlikely that, even if the initial HomeOwner homestead exemption was accidentally applied to four of the plaintiff's properties, the type of exemption on two of the properties would then, after several years, be accidentally changed to Long-Term Occupant for one year and then accidentally be changed back to HomeOwner. Based on this, we cannot say that the Department's

determination that the plaintiff failed to prove clerical error or omission by the Assessor was against the manifest weight of the evidence. *White v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2014 IL App (1st) 132315, ¶ 23 (administrative agency's determinations of questions of fact to be disturbed only if against the manifest weight of the evidence).

¶ 31 Finally, although not raised by either of the parties, our review of the record on appeal revealed a third issue that requires our attention because it involves a void order. *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 486 (2007) (courts have an independent duty to vacate void orders and, thus, may do so *sua sponte*); *Schak v. Blom*, 334 Ill. App. 3d 129, 134 (2002) (same). Under the version of section 9-275 that was in effect at the time that the Assessor served the plaintiff with the Notices, the Assessor could impose a lien in an amount that included unpaid taxes, interest, and penalties if "the property owner received 3 or more erroneous homestead exemptions *during any of the 6 assessment years immediately prior to the assessment year in which the notice of intent to record at [sic] tax lien is served.*" (Emphasis added.) 35 ILCS 200/9-275(f) (West Supp. 2013). In this case, the Department awarded the Assessor unpaid taxes, interest, and penalties for years 2007, 2008, 2009, 2010, 2011, 2012, and 2013.

¶ 32 We have previously held that where proceedings under section 9-275 are instituted in 2014, as they were here, this provision entitles the Assessor to collect delinquent taxes, interest, and penalties only for the years 2008, 2009, 2010, 2011, 2012, and 2013, but does not entitle the Assessor to collect such monies for 2007. *Cuevas*, 2017 IL App (1st) 151318, ¶¶ 37-38. Actions taken by an administrative agency that exceed the scope of its statutory authority are void. *Delgado*, 224 Ill. 2d at 485; *Mitchell v. State*, 2016 IL App (1st) 141109, ¶ 19. Accordingly, because the Department exceeded its authority under section 9-275(f) by awarding the Assessor unpaid taxes, interest, and penalties for 2007, that portion of its order is void and must be vacated, as must the portion of the trial court's order affirming that award.

¶ 33                                                   CONCLUSION

¶ 34 For the foregoing reasons, the judgment of the circuit court is affirmed in part and vacated in part.

¶ 35 Affirmed in part; vacated in part.